UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No. 05-22163-CIV-HOEVELER



MARIA LUISA BERNAL, a Colombian Citizen,

     Plaintiff,

v.

UBS INTERNATIONAL INC., a Florida
Corporation, GROVE ISLE CONDOMINIUM
UNIT C1701, 3 Grove Isle Drive, Miami, Florida,
REMBRANDT HOLDING INC., a Florida
Corporation and ALLIED FARMS LLC, a Florida
Limited Liability Corporation,

     Defendants.

_____/

## MOTION TO COMPEL ARBITRATION AND/OR DISMISS AND SUPPORTING MEMORANDUM OF LAW

Defendant UBS International Inc. ("UBS International") respectfully moves this Honorable

Court for an Order compelling arbitration and/or dismissing this action.

### FACTUAL BACKGROUND

**A. Plaintiff's Original Complaint**

Plaintiff Maria Luisa Bernal originally filed this action against her husband, Richard Vaughn

("Mr. Vaughn"), UBS International and others.  Plaintiff asserted that this Court had jurisdiction

over this action because, she alleged, UBS International is an Edge Act Bank.



UBS International moved to dismiss the complaint for lack of jurisdiction over the subject matter, providing evidence that it is not an Edge Act Bank.  UBS International also moved, in the alternative, to compel arbitration.

Rather than responding to UBS International's motion, Plaintiff sought to avoid its impact by filing an Amended Complaint.  In a transparent attempt to create federal diversity jurisdiction, Plaintiff has dropped Mr. Vaughn as a party in her Amended Complaint.

**B.     The Allegations of the Amended Complaint**

Plaintiff's Amended Complaint alleges that she is a Colombian citizen and, "upon information and belief," the beneficiary of a trust known as the Mona Lisa Trust.  Plaintiff alleges, also upon information and belief, that her now ex-husband Mr. Vaughn, also a Colombian citizen, created the Mona Lisa Trust on October 15, 2001 in the British Virgin Islands, with Trident Trust Company as Trustee "at all material times."

Plaintiff also alleges that, in July of 2003, Mr. Vaughn opened an account at UBS International in the name of the Mona Lisa Trust, Account No. R2-60925 ("the Account").  Plaintiff claims that she and Mr. Vaughn, at some undisclosed time, entered into a "Dissolution Agreement" in connection with their marital dissolution proceedings in Bogota, Colombia.  Plaintiff alleges that, pursuant to the Dissolution Agreement, she was to receive the proceeds of the Account upon entry of a decree dissolving her marriage to Mr. Vaughn.  Plaintiff then alleges that a Family Court in Bogota, Colombia, dissolved her marriage to Mr. Vaughn on June 28, 2005.  Plaintiff claims, again upon information and belief, that the Mona Lisa Trust has been terminated and she is its sole remainderman, entitled to distribution of trust proceeds.

Regarding UBS International, Plaintiff complains that UBS International owed her a duty to create the Account as a trust for her benefit, and, instead, created it as a corporate account from which either she or Mr. Vaughn could withdraw funds.  According to Plaintiff, Mr. Vaughn, without her consent or Trident Trust Company's, unilaterally withdrew $350,000 from the Account between July and September of 2004, and UBS International was negligent in permitting him to do so.

Although Plaintiff allegedly bases her claims on Mr. Vaughn's wrongful withdrawal of assets from the Mona Lisa Trust, Plaintiff has not joined the trust, its alleged trustee or any other trust beneficiaries as parties.  And, Plaintiff has deliberately dropped Mr. Vaughn, the alleged wrongful recipient of alleged trust funds, as a party.

Finally, and in response to UBS International's prior motion to compel arbitration, Plaintiff now alleges that Trident Trust Company never signed the documents to open the Account, and, therefore, "any arbitration provisions contained within those papers are not binding or enforceable upon the Mona Lisa Trust, or upon anyone suing for recovery of trust assets."  Amended Complaint, ¶ 14.

## C.     Opening of the Account

Plaintiff never sets out the facts concerning the opening of the Account in her Amended Complaint.  In fact, **Plaintiff** and Mr. Vaughan opened the Account at UBS International for Mona Lisa Trust, an entity they represented to be a corporation.  Plaintiff has never opened an individual account at UBS International.  Trident Trust Company did not open the Account with UBS International.

Case No. 05-22163-CIV-HOEVELER

When they opened the Account in July of 2003, Plaintiff and Mr. Vaughn represented to UBS International that the Mona Lisa Trust was a corporate entity incorporated under the laws of the British Virgin Islands. A copy of the Corporate Resolution executed by Plaintiff in connection with the opening of the Account is attached as Exhibit "A" to this Motion. Plaintiff also executed a Certificate of Foreign Status of Beneficial Owner for United States Tax Withholding, which represented, under penalty of perjury, that Mona Lisa Trust was a corporation. A true and correct copy of this document is attached as Exhibit "B" to this Motion.

Also in connection with the opening of the Account, Plaintiff received a set of account opening documents, including an "International Brokerage Account Application" (the "Account Application"), which they signed. A true and correct copy of the account opening documents, including the Account Application, is attached as Exhibit "C" to this Motion.

The account opening documents advised Plaintiff to "[i]ndicate the ownership of the Account to be opened" by completing "the *Account Holder* section with the organization's information and identify[ing] in the *Business Information* section officers or other individuals who are authorized to instruct [UBS International] to conduct transactions in this account." Exhibit C, at p. 1 ¶1. The first page of the Account Application is clearly labeled "Account Application and Agreement For Non-US Corporations, Partnerships And Other Entities," and advised Plaintiff that "**If you are interested in opening** an individual account, an account for an estate, **a trust account for an individual,** or a Managed Account, **different or additional documentation is required.**" [Emphasis added]. Exhibit C, at p. 2.

-4-

Case No. 05-22163-CIV-HOEVELER

Plaintiff signed the Account Application, which represented to UBS International that "The owner of this account is a . . . Corporation," and that she and Mr. Vaughn were its directors. Exhibit C, at p. 3, lines (a) and (b). In the Account Application, Plaintiff also agreed as follows:

> **BY SIGNING BELOW ACCOUNT HOLDER ACKNOWLEDGES AND AGREES AS FOLLOWS TO ALL OF THE TERMS AND CONDITIONS IN THE INTERNATIONAL BROKERAGE ACCOUNT AGREEMENT (Agreement), AND MAKES THE REPRESENTATIONS SET FORTH BELOW:  . . . . 2. (a) Account Holder has received and read a copy of the Agreement; (b) Account Holder has read the Arbitration and Jurisdiction provisions in the Agreement; . . . 4. Account Holder has supplied all of the information contained in this account application and declares it as true and accurate.** Exhibit C, at p. 3, line (c).

The arbitration provision in the International Brokerage Account Agreement (the "Agreement") to which Plaintiff agreed in the Account Application provides:

> **ARBITRATION**
>
> .   .   .
>
> **Client agrees that the Account is subject to the arbitration rules of the NASD and that any and all controversies which may arise between UBS International, any of UBS International's employees or agents and Client concerning any account, transaction, dispute or the construction, performance or breach of this Agreement or any other agreement, whether entered into prior to, on or subsequent to the date hereof, shall be determined by arbitration.  Any arbitration under this agreement shall be held under and pursuant to and be governed by the Federal Arbitration Act, and shall be conducted before an arbitration panel convened by the National Association of Securities Dealers, Inc.** Exhibit D, at p. 4.

A true and correct copy of the Agreement is attached as Exhibit "D" to this Motion.

## SUMMARY OF ARGUMENT

Plaintiff opened a corporate account for Mona Lisa Trust with UBS International, and entered into an arbitration agreement for Mona Lisa Trust with UBS International.  Therefore, to the extent

Case No. 05-22163-CIV-HOEVELER

Plaintiff has any claims as a result of the opening of the Account for Mona Lisa Trust, Plaintiff agreed and is obligated to arbitrate those claims with UBS International. Therefore, Plaintiff should be compelled to arbitration.

Alternatively, Plaintiff has no claims whatever against UBS International as a matter of law, since she was never a customer and had no relationship with UBS International that would give rise to any duty to her that UBS International could violate. Further, if Plaintiff could state a claim against UBS International, that claim would have to be dismissed because Plaintiff has failed to join two indispensable parties, Trident Trust Company and Mr. Vaughn, whose joinder would deprive this Court of jurisdiction.

## MEMORANDUM OF LAW

### A.   Plaintiff Must Resolve Her Claims in Arbitration

Securities arbitration agreements involve interstate commerce and are controlled by the Federal Arbitration Act ("FAA"). Section 2 of the FAA declares that a written agreement to arbitrate, contained in any contract, shall be valid, irrevocable and enforceable. 9 U.S.C. §2 (1970). There is a strong federal interest in favor of arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1 (1983).

Federal courts have regularly reviewed the language of broker/customer arbitration clauses and determined, as a matter of law, that any dispute between a broker and a customer is subject to arbitration. "It is clear that every 'relation' and 'dealing' between [the brokerage firm] and the plaintiff is covered by the agreement; further *any* 'controversy' must be resolved by arbitration". *Sease v. Paine Webber, Inc., 697 F. Supp. 1190, 92 (S.D. Fla. 1988).*

Case No. 05-22163-CIV-HOEVELER

In *Sease*, the court followed the Eleventh Circuit's mandate in *Driscoll v. Smith Barney, Harris, Upham & Co.,* 815 F.2d 655 (11th Cir. 1987), *vacated on other grounds,* 484 U.S. 909 (1987), and rigorously enforced the arbitration clause in a broker/customer account agreement. *Sease,* 697 F.Supp. at 1193. Thus, the *Sease* court held that subjecting every controversy between brokers and customers to arbitration is consistent with the congressional mandate that "the court must give the [arbitration] clause a broad interpretation and refer to arbitration all disputes or controversies arising between the customer and brokerage house." *Id.* at 1192.

Unquestionably, Plaintiff here asserts issues that fall within the scope of the Agreement that Plaintiff voluntarily executed. Plaintiff's claims against UBS International are based entirely on Plaintiff's allegation that UBS International:

> owed [Plaintiff] a duty to properly establish [the Account] consistent with recognized industry norms and its own internal guidelines. Specifically, [UBS International] owed [Plaintiff] a duty to create [the Account] as a trust for her benefit, and not as a corporation in which Vaughan could manipulate this account for his own interest. Complaint, at ¶ 30.

Plaintiff has no relationship with UBS International, and UBS International cannot owe her any duties, except insofar as she is entitled to assert Mona Lisa Trust's rights under its Agreement with UBS International. The Agreement requires arbitration of "all controversies . . . concerning any account, transaction, dispute or the construction, performance or breach of this Agreement or any other agreement, whether entered into prior to, on or subsequent to the date hereof." Exhibit D, at p. 4.

Plaintiff cannot avoid her obligation to arbitrate by alleging "upon information and belief" that Mona Lisa Trust was a trust and not a corporation, and should have opened a trust account, which

Case No. 05-22163-CIV-HOEVELER

only Trident Trust Company could authorize. Trident Trust Company had no involvement with the Account, either to open it or to give instructions for it. Plaintiff and Mr. Vaughn opened and funded the Account, and only Plaintiff and Mr. Vaughn could enter into agreements pertaining to the account or give instructions concerning the Account. Plaintiff and Mr. Vaughn freely and voluntarily agreed to arbitrate all disputes regarding the Account they had opened, which they represented they had opened for a corporate entity known as the Mona Lisa Trust.

Therefore, the Court is obligated to enforce the arbitration agreement: "[T]he Act leaves no place for the exercise of discretion by [the court], but instead mandates that [courts] shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter v. Byrd,* 470 U.S. 213 at 218 (1985).

Federal Law mandates the enforcement of UBS International's arbitration agreement with the Plaintiff. The arbitration agreement is broad enough to encompass all of the claims in the Complaint, and Plaintiff is required to honor it. "[Congressional] concern requires [courts] to rigorously enforce agreements to arbitrate. . . . By compelling arbitration [a court] successfully protects the contractual rights of the parties and their rights under the Arbitration Act." *Id.* at 221.

> **B. Federal Law Requires That All Proceedings in This Court Be Stayed Pending Arbitration**

The FAA, 9 U.S.C. § 3, provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay a trial of the action until such arbitration has been had in accordance with the terms of the agreement.

Case No. 05-22163-CIV-HOEVELER

The FAA requires a stay of all proceedings pending arbitration. *Suarez-Valdez v. Shearson Lehman/American Express, Inc.*, 858 F. 2d 648 (11th Cir. 1988) (vacating district court order permitting discovery to proceed, staying trial of action and compelling arbitration); *Stanton v. PaineWebber*, 685 F. Supp. 1241 (S.D. Fla. 1988); *Schacht v. Hartford Fire Insurance C*o., 1991 U.S. Dist. LEXIS 16430 (N.D. Ill. 1991) (listing some of the overwhelming majority of decisions holding that all proceedings shall be stayed in arbitrable matters).

The "unmistakably clear" congressional purpose of the FAA is that the arbitration procedure selected by the parties be "speedy and not subject to delay and obstruction in the courts." *Prima Paint Corp. v. Flood Conklin Manufacturing Co.*, 388 U.S. 395 (1967).  The policy of the FAA is to encourage arbitration and to relieve the congestion in the courts. *Seaboard Coastline Railroad Co. v. National Rail Passenger Corp.*, 554 F. 2d 657 (5th Cir. 1977).

**C.  In The Event That Plaintiff Is Not Bound to Arbitrate, Then Plaintiff's Amended Complaint Should Be Dismissed For Failure to State a Claim for Which Relief Can Be Granted.**

Plaintiff does not (and cannot) allege that she was ever a customer of UBS International. Because Plaintiff was not a customer of UBS International, UBS International owed her no duties as an individual. As UBS International owed her no duties, it cannot be liable for negligence toward Plaintiff.

To assert a negligence claim, a plaintiff must allege the existence of a legally cognizable duty of care owed to that plaintiff, a breach of that duty by the defendant that proximately caused the plaintiff injury, and the existence of damages. *E.g., Ewing v. Sellinger*, 758 So.2d 1196 (Fla. 4th DCA 2000); *Miles v. Naval Aviation Museum Foundation, Inc.*, 289 F.3d 715, 722 (11th Cir. 2003).

-9-

Plaintiff has utterly failed to allege any legally cognizable duty that UBS International could owe her.  Plaintiff was not a customer of UBS International, and UBS International owed her no duties. Brokerage firms have no duties to non-customers, to trust beneficiaries or even to Co-Trustees under these circumstances.  *See, Holtz v. J.J.B. Hilliard W.L. Lyons, Inc.*, 185 F.3d 732, 749-51 (7th Cir. 1999) (applying similar Indiana law to hold that a beneficiary had no negligence claim against a brokerage firm that allowed her deceased brother, its customer, to eliminate her as a beneficiary of his accounts); *Aetna Life and Casualty Co. v. Union Trust Co.*, 646 A.2d 799 (Conn. 1994) (trust beneficiary had no claim against bank where attorney trustee, the bank's customer, converted funds from the trust to his personal use); *St. Gaudens v. Southeast Bank, N.A.*, 559 So.2d 1259 (Fla. 3d DCA 1990) (bank, as co-trustee of a custodian account, has no duty to protect a co-trustee who is the sole beneficiary of the trust).

Further, Plaintiff cannot allege any failure by UBS International to follow her instructions. Undisputedly, Plaintiff executed documents representing to UBS International that Mona Lisa Trust was a corporation and that UBS International must take instructions regarding the Account either from her or from Mr. Vaughn.  Plaintiff cannot avoid the plain import of the written representations she made to UBS International by conclusorily alleging that UBS International should somehow have acted contrary to her written instructions.

As Plaintiff has not alleged any legally cognizable duty UBS International owed her, nor any breach of such a duty, UBS International respectfully submits that Plaintiff's claim against it must be dismissed.

**D.  Should Plaintiff State a Claim For Which Relief Can Be Granted, That Claim Must Be Dismissed For Failure To Join Two Indispensable Parties Whose Joinder Would Deprive This Court of Jurisdiction.**

UBS International does not believe that Plaintiff has stated, or can ever state, a cognizable claim.  Still, should any such claim possibly exist, it could only arise by virtue of Plaintiff's supposed status as a trust beneficiary, if, indeed, the Mona Lisa Trust was ever established as a trust, and if, indeed, the Account is or ever was an asset of the trust.  In that event, it is clear as a matter of law that both Trident Trust Company, the alleged Trustee of the alleged trust, Mona Lisa Trust, and Mr. Vaughn, the alleged wrongful recipient of funds from the Account, are indispensable parties that Plaintiff must join.  The joinder of these indispensable parties would destroy diversity jurisdiction, and require dismissal of this action.

In a diversity case, the question of joinder is one of federal law, to be decided under Fed.R.Civ.P. 19. *Tick v. Cohen*, 787 F.2d 1490, 1493 (11th Cir. 1986). In *Tick*, the Eleventh Circuit applied Fed.R.Civ.P. 19 to determine whether the beneficiaries of certain trusts were indispensable parties to a suit.  Acknowledging that "[t]he general rule is, that in suits respecting trust property, brought either by or against the trustee, the *cestuis que trust* as well as the trustees are necessary parties," the Court held that all beneficiaries of the trusts were necessary parties.  Because joinder of some absent beneficiaries would destroy diversity, the Court then balanced the almost certain effect on the absent beneficiaries of rulings affecting the trust property against the fact that plaintiff could bring his action in State court and obtain there the relief he was seeking in federal court.  The Eleventh Circuit then held that this analysis required a finding that the absent beneficiaries were indispensable, and dismissed the case for lack of diversity jurisdiction.

-11-

Case No. 05-22163-CIV-HOEVELER

Florida State courts also follow the general rule that beneficiaries, trustees and the trusts themselves are indispensable parties to suits involving trust property. In *Fulmer v. Northern Central Bank*, 386 So.2d 856 (Fla. 2d DCA 1980), the personal representative of an estate challenged a decedent's inter vivos transfer of assets to a trust in Pennsylvania, with a Pennsylvania bank as trustee and two charitable organizations in Pennsylvania as beneficiaries. The Second District held that both the beneficiaries and the trustee bank were indispensable parties. *See also, Sylvester v. Sylvester*, 557 So.2d 599 (Fla. 4th DCA 1990) (in a dissolution of marriage proceeding, court could not determine that trust set up by husband was revocable without joining trustee and beneficiaries as parties); *Markham v. Fay*, 74 F.3d 1347, 1355 (1st Cir. 1996) (both trustees and beneficiaries are indispensable parties in suits respecting trust property); *Lower v. New York Life Insurance Co.*, 773 F.Supp. 1518, 1523 (M. D. Fla. 1991) (recognizing general rule that a trustee is an indispensable party to an action affecting the corpus or assets of the trust, but declining to apply the rule where neither the trust nor the trustees have yet come into existence)

Florida courts have also held that recipients of allegedly wrongfully transferred assets are indispensable parties in actions to recover those assets. Thus, in *Martinez v. Balbin*, 76 So. 488 (Fla. 1954), the Florida Supreme Court held that the transferees of property allegedly wrongly removed from an estate were indispensable parties in a suit against the personal representative of the estate who had ordered the transfer of the property. Similarly, in *Jannis v. Tanner*, 533 So.2d 300 (Fla. 3d DCA 1988), the Third District held that the guardian and the guardianship estate, as well as any party whose interests a requested judicial determination directly affects, are indispensable parties to proceedings involving the disposition of the ward's property.

-12-

Here, Plaintiff alleges that Mr. Vaughn wrongfully received $350,000 in proceeds allegedly belonging to a trust of which she believes she is a beneficiary. It is not possible to determine Plaintiff's claim without impacting the trust's rights, any other beneficiaries' rights, Mr. Vaughn's rights and Trident Trust Company's rights. Further, failure to join these parties in this action exposes UBS International to the risk of inconsistent adjudications in proceedings involving the trust, Trident Trust Company and/or Mr. Vaughn. Joinder of these indispensable parties will destroy diversity jurisdiction, but it will not leave Plaintiff without a remedy. Plaintiff can bring her claims, if any, in arbitration or, should the Court find she has not agreed to arbitrate, in Florida State court.

## IV. CONCLUSION

Plaintiff must be compelled to arbitration. Alternatively, this action should be dismissed for failure to state a claim for which relief can be granted and failure to join indispensable parties.

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via facsimile and mailed this 21st day of November, 2005 to Carlos F. Concepcion, Esquire, Concepcion & Associates, P.A., 355 Alhambra Circle, Suite 1250, Miami, Florida 33134.

Respectfully submitted,

Sara Soto
Fla. Bar No. 265152
FOWLER WHITE BURNETT P.A.
Espirito Santo Plaza, 14th Floor
1395 Brickell Avenue
Miami, Florida 33131-3302
Telephone: (305) 789-9200
Facsimile: (305) 789-9201

[pmk] W:\66676\MTNCPL39.SS{11/21/5-18:4}

-13-

# EXHIBIT A

 **UBS**

UBS International [CR]

# Corporate Resolutions

| Account Name/Title: MONA LISA TRUST | Branch: R2 | Account Number: 60935 | FA: |

I, RICHARD VAUGHAN _____ hereby certify that I am the Secretary of MonaLisa Trust _____ ("Corporation") a _PRIVATE_ _____ [describe the nature of the entity, such as public or private] corporation duly organized and existing under the laws of _____ _BVI_ _____ [enter jurisdiction title, such as country, state or province], and that the following resolutions were duly adopted by the Board of Directors at a duly called meeting or by unanimous consent on _8/20/03_ _____:

**WHEREAS, The Corporation** seeks to benefit from opening and maintaining one or more securities, loan and/or guarantee accounts with UBS International Inc. (UBS-I), a broker-dealer organized in the United States and registered with the U.S. Securities and Exchange Commission, and/or its successor firms, subsidiaries, affiliates, including but not limited to its clearing broker UBS PaineWebber Inc. and UBS Bank USA, and any third-party service providers (collectively, "UBS International").

**Now, Therefore, Be It Resolved That:**

1) The Corporation is authorized to establish with UBS International one or more accounts for the purchase and sale of securities and other Property, the establishment of credit and/or the guarantee of another person's or entity's obligations (the "Account"). "Property" includes, but is not limited to, securities, money, stocks, options, bonds, notes, futures contracts, commodities, commercial paper, certificates of deposit and other obligations, contracts, all other property usually and customarily dealt in by brokerage firms and any other property that can be recorded in the Account. UBS International is designated an agent of the Corporation for property of any nature and is authorized to receive, hold and deliver any funds, securities or other Property within or without the United States, registered in or transferred into the name of UBS International or its nominee(s) or the name of one or more custodians or nominees thereof. UBS International may either directly or through custodians retain unregistered securities or deposit the certificates representing such securities, in bulk with a central certificate depository, so that transfer of ownership of such securities may be made by bookkeeping entry on the books of such depository.

2) The Corporation shall grant a security interest to UBS PaineWebber Inc. as set forth in greater detail in the account agreement (including all documents incorporated therein) governing the Account, as amended from time to time. The Corporation shall grant a security interest to such additional entities as may be specified in that account agreement and any additional agreements for the types of services as designated by the Corporation's corporate officers from time to time.

3) The Corporation is authorized to use the Account and services offered by UBS International to (a) sell short, (b) trade on margin, (c) borrow and/or obtain credit (including all manner of credits and/or letters of credit) from time to time from UBS PaineWebber Inc. and guarantee obligations of others to UBS International, in United States dollars or any foreign currency and (d) pledge, mortgage, assign or subject to a security interest or lien any property of any sort of the Corporation as security for any liability of the Corporation.

4) Each of the corporate officers named in the spaces below (each, together with persons designated under resolution number 5 below, hereinafter called an "Authorized Person") is authorized individually, without counter signature or co-signature, to act on behalf of the Corporation to (a) open the Account and, with respect to the Account, to execute on behalf of the Corporation any and all relevant documents, and to deal with UBS International in connection with all aspects of the Account, with no limits as to amount, (b) obtain all such services as UBS International shall offer, including but not limited to the services set forth under resolution number 6 below and to purchase and sell and enter into any transaction whatsoever in connection with the Account and the Property therein, and (c) bind the Corporation in respect of any agreements entered into pursuant to clause (a) or (b) of this fourth resolution.

The additional information on page 3 must be completed for each corporate officer listed in the spaces below. (At least two to be designated.)

| RICHARD VAUGHAN | |
| Name and Title of Officer | Signature of Officer |
| MONA LISA VAUGHAN | MONA LISA VAUGHAN |
| Name and Title of Officer | Signature of Officer |
| | |
| Name and Title of Officer | Signature of Officer |
| | |
| Name and Title of Officer | Signature of Officer |

5) The Authorized Persons acting as above specified are authorized to appoint one or more attorneys-in-fact or agents to act on behalf of the Corporation in the same capacity as set forth under resolution number 4 above, and are authorized to execute and deliver to UBS International any powers of attorney or other documents to effect or evidence such appointment.

6) UBS International is authorized, but not obligated, to deal with each Authorized Person individually, as follows, subject to the Corporation having completed documentation relating to the relevant products and services and subject to UBS International policy and practice as in effect from time to time:

a) to accept all orders for purchases and sales and all instructions of any nature whatsoever in connection with the Account given verbally, in writing, or via electronic communications by him or her on behalf of the Corporation, as the action of the Corporation with-out limit or further inquiry as to his or her authority or the validity or legality of such actions under any and all laws, rules and regulations applicable to the Corporation and the conduct of its business and affairs;

b) to receive any funds, securities or other property for the account of the Corporation; to receive drafts, checks or other funds or property delivered to it for deposit for the account of the Corporation, whether or not endorsed with the name of the Corporation by rubber stamp, facsimile, mechanical, manual or other signature, and any such endorsement by whomsoever affixed shall be the endorsement of the Corporation, or otherwise endorsed, or unendorsed, provided that if any such item shall bear, or be accompanied by directions (by whomsoever made) for deposit to a specific account, then such deposit shall be to such specific account; and to honor written instructions from each Authorized Person to deliver either in bearer form, in street certificates, in any names or in any other manner any funds, securities or other property held for the account of the Corporation;

Image reflects quality of original submission

INT-023 / 1-03
021122-1173

 **UBS**

c) to extend loans and letters of credit in connection with the maintenance of a margin account, loan account or other credit facility for the Corporation;

d) to effect MasterCard®, transactions in connection with the Account, including but not limited to use of the Platinum MasterCard™ or MasterCard BusinessCard®;

e) to honor written instructions from each Authorized Person to write checks, drafts, instruments, instructions or orders for the payment or withdrawal of funds drawn on the Account or payable to the order of the Corporation and bearing the signature or signatures now or hereafter authorized by the Corporation without limit as to amount, without inquiry and without regard to its application or that of its proceeds, including drafts, checks, instruments, instructions or orders for the payment or withdrawal of funds drawn or endorsed to the order of or in favor of any person whose signature appears thereon or any other officer or officers or agent or agents of the Corporation which may be deposited with or delivered or transferred to UBS PaineWebber Inc., or to any other person, firm or corporation for the personal credit or account of any such officer or agent, and shall not be liable for any disposition which any such officer or agent shall make of all or any party of any draft, check, instrument, instruction or order for the payment or withdrawal of funds drawn on the Account or payable to the order of the Corporation or the proceeds thereof, notwithstanding that such disposition may be for the personal account or benefit or in payment of the individual obligation of any such officer or agent to UBS International, or otherwise; and to send all confirmations, notices, demands, statements and other communications to the Authorized Person and to the Corporation, attention:

SANTIAGO UUDA - CONSULTANT - MIAMI, FL

(insert name and position of officer and office location)

f) to open deposit accounts in foreign currencies with any depository to purchase, sell, transfer, or dispose of for present or future delivery foreign moneys, credits or exchange on deposit or otherwise and all manner of instruments representative thereof by endorsement or otherwise, and to execute and deliver any agreements or instruments relating to any such transactions;

g) to provide any and all investment management and advisory services that UBS International now or hereafter provides (including without limitation ACCESS℠, Managed Accounts Consulting, the Portfolio Management Program ("PMP"), SELECTIONS℠, PACE℠ Select Advisor and PACE Multi Advisor) and to delegate discretion to UBS International or to a subadvisor in connection with any of the above services; and

h) to act, in effecting any of the aforesaid transactions, upon instructions contained in any message received by it, transmitted by any form or agency or communication whatsoever, which UBS International believes in good faith to have been originated by an Authorized Person acting as above specified.

7) Any withdrawals of money, check writing, MasterCard purchases and other nonbrokerage transactions including but not limited to any borrowings, obtaining letters of credit and other types of credit facilities made from time to time on behalf of the Corporation with UBS International are hereby ratified, confirmed and approved.

8) UBS International is authorized to rely upon the authority conferred by these resolutions until UBS-I receives a certified copy of resolutions of the Corporation's Board of Directors revoking or modifying these resolutions. In the event that UBS-I, for any reason, is uncertain as to the continuing effectiveness of the authority conferred by these resolutions or any other resolutions of the Corporation, UBS International may refrain from taking any action with respect to the Account until such time as it is satisfied as to its authority and UBS International shall be indemnified against and held harmless from any claims, demands, expenses, loss or damage, including legal fees and costs, resulting from or arising out of its refraining from taking any action.

9) In consideration of UBS International acting in reliance upon the foregoing resolutions and the succeeding resolutions, it shall be fully protected in so acting and the Corporation agrees to indemnify and save harmless UBS International from and against any and all loss, damage, liability, claims and expenses whatsoever arising by reason of its so acting.

*Attention Transfer Agent*

10) Any Authorized Person is fully authorized and empowered to transfer, convert, endorse, sell, assign, set over and deliver any and all shares of stocks, bonds, debentures, notes, subscription warrants, stock purchase warrants, evidence of indebtedness, or other securities now or hereafter standing in the name of or owned by the Corporation, and to make, execute and deliver, under the corporate seal of the Corporation or otherwise, any and all written instruments of assignment and transfer necessary or proper to effectuate the authority hereby conferred.

11) Whenever there shall be annexed to any instrument of assignment and transfer, executed pursuant to and in accordance with the foregoing resolution, a certificate of the Secretary or an Assistant Secretary of the Corporation's office at the date of such certificate and such certificate shall set forth these resolutions and shall state that these resolutions are in full force and effect, and shall also set forth the names of the persons who are then officers of the Corporation, then all persons to whom such instrument with the annexed certificate shall thereafter come, shall be entitled, without further inquiry or investigation and regardless of the date of such certificate, to assume and to act in reliance upon the assumption that the shares of stock or other securities named in such instrument were theretofore duly and properly transferred, endorsed, sold, assigned, set over and delivered by the Corporation, and that with respect to such securities the authority of these resolutions and of such officers is still in full force and effect.

12) The Secretary or an Assistant Secretary of the Corporation is authorized and directed to certify to UBS International:

a) that these resolutions have been duly adopted, are in full force and effect and are in accordance with the provisions of applicable law and regulation and the charter and by-laws of the Corporation;

b) the identities of the Corporation's Authorized Persons and, from time to time hereafter, such changes as may occur in the identities of such Authorized Persons as such changes are made; and

c) that UBS International shall be fully protected in relying on such certifications of the Secretary or Assistant Secretary and shall be indemnified and saved harmless from any and all loss, damage, liability, claims and expenses whatsoever resulting from honoring the signature of any Authorized Person so certified or refusing to honor any signature not so certified.

INT-023 / 1-03
021122-1173

 **UBS**

**UBS International**

I certify that there is no provision in the charter or by-laws of the Corporation limiting the power of the Board of Directors to adopt the foregoing resolutions and that the same are in conformity with the provisions of said charter and by-laws, neither of which requires or provides for any vote or consent of other than the Board of Directors to authorize the adoption of such resolutions.

I further certify that the persons listed above are duly elected or appointed qualified officers of the Corporation, hold in the Corporation the respective positions indicated above and that set forth opposite each respective name is the true and correct signature of such person.

WITNESS my hand and the seal of the Corporation at _____ this _____ 20TH

day of __AUGUST__ , 20 __03__

_____
Signature of Secretary

### Additional Information Addendum

Please complete the following information for all of the corporate officers designated on page one. Pursuant to the USA Patriot Act, UBS International is requesting certain identification information from Client for purpose of identification verification.

| Officer Name: | | Date Of Birth: | | SS#: | |
|---|---|---|---|---|---|
| Country of Citizenship:<br>☐ USA  ☐ Other (specify): | | Passport/CEDULA and Green Card#:(If non-U.S. and no SS# specified.)<br>_____ / _____ | | | |
| Home Address: | | City: | State: | | ZIP Code: |
| Mailing Address: *(If different than home address.)* | | City: | State: | | ZIP Code: |

| Officer Name: | | Date Of Birth: | | SS#: | |
|---|---|---|---|---|---|
| Country of Citizenship:<br>☐ USA  ☐ Other (specify): | | Passport/CEDULA and Green Card#:(If non-U.S. and no SS# specified.)<br>_____ / _____ | | | |
| Home Address: | | City: | State: | | ZIP Code: |
| Mailing Address: *(If different than home address.)* | | City: | State: | | ZIP Code: |

| Officer Name: | | Date Of Birth: | | SS#: | |
|---|---|---|---|---|---|
| Country of Citizenship:<br>☐ USA  ☐ Other (specify): | | Passport/CEDULA and Green Card#:(If non-U.S. and no SS# specified.)<br>_____ / _____ | | | |
| Home Address: | | City: | State: | | ZIP Code: |
| Mailing Address: *(If different than home address.)* | | City: | State: | | ZIP Code: |

| Officer Name: | | Date Of Birth: | | SS#: | |
|---|---|---|---|---|---|
| Country of Citizenship:<br>☐ USA  ☐ Other (specify): | | Passport/CEDULA and Green Card#: (If non-U.S. and no SS# specified.)<br>_____ / _____ | | | |
| Home Address: | | City: | State: | | ZIP Code: |
| Mailing Address: *(If different than home address.)* | | City: | State: | | ZIP Code: |

© 2003 UBS International Inc.
All Rights Reserved. Covered by SIPC.
UBS International is a subsidiary of UBS AG.
ACCESS, SELECTIONS and PACE are service marks of UBS PaineWebber Inc.
MasterCard, Platinum MasterCard and MasterCard BusinessCard are both registered trademarks
and service marks of MasterCard International Incorporated.

Image reflects quality of original submission

# EXHIBIT B

R 60925 CV

| Form **W-8BEN** | **Certificate of Foreign Status of Beneficial Owner for United States Tax Withholding** | |
|---|---|---|
| (Rev. December 2000)<br>Department of the Treasury<br>Internal Revenue Service | ▶ Section references are to the Internal Revenue Code. ▶ See separate instructions.<br>▶ Give this form to the withholding agent or payer. Do not send to the IRS. | OMB No. 1545-1621 |

| Do not use this form for: | Instead, use Form: |
|---|---|
| ● A U.S. citizen or other U.S. person, including a resident alien individual | W-9 |
| ● A person claiming an exemption from U.S. withholding on income effectively connected with the conduct of a trade or business in the United States | W-8ECI |
| ● A foreign partnership, a foreign simple trust, or a foreign grantor trust (see instructions for exceptions) | W-8ECI or W-8IMY |
| ● A foreign government, international organization, foreign central bank of issue, foreign tax-exempt organization, foreign private foundation, or government of a U.S. possession that received effectively connected income or that is claiming the applicability of section(s) 115(2), 501(c), 892, 895, or 1443(b) (see instructions) | W-8ECI or W-8EXP |

**Note:** These entities should use Form W-8BEN if they are claiming treaty benefits or are providing the form only to claim they are a foreign person exempt from backup withholding.

| ● A person acting as an intermediary | W-8IMY |

**Note:** See instructions for additional exceptions.

## Part I   Identification of Beneficial Owner (See instructions.)

**1** Name of individual or organization that is the beneficial owner
████████████████

**2** Country of incorporation or organization
████████████

**3** Type of beneficial owner:
☐ Individual   ☐ Corporation   ☒ Disregarded entity   ☒ Partnership   ☒ Simple trust
☒ Grantor trust   ☒ Complex trust   ☒ Estate   ☒ Government   ☒ International organization
☒ Central bank of issue   ☒ Tax-exempt organization   ☒ Private foundation

**4** Permanent residence address (street, apt. or suite no., or rural route). Do not use a P.O. box or in-care-of address.
████████████████

City or town, state or province. Include postal code where appropriate.
████████████████

Country (do not abbreviate)
████████

**5** Mailing address (if different from above)  C/O TBL INVESTMENTS
████████████   MIAMI FL ██████

City or town, state or province. Include postal code where appropriate.
████████████

Country (do not abbreviate)
UNITED STATES

**6** U.S. taxpayer identification number, if required (see instructions)
████████   ☒ SSN or ITIN   ☒ EIN

**7** Foreign tax identifying number, if any (optional)
████████

**8** Reference number(s) (see instructions)
████████████████

## Part II   Claim of Tax Treaty Benefits (If applicable)

**9** I certify that (check all that apply):

**a** ☒ The beneficial owner is a resident of ████████ within the meaning of the income tax treaty between the United States and that country.

**b** ☒ If required, the U.S. taxpayer identification number is stated on line 6 (see instructions).

**c** ☒ The beneficial owner is not an individual, derives the item (or items) of income for which the treaty benefits are claimed, and, if applicable, meets the requirements of the treaty provision dealing with limitation on benefits (see instructions).

**d** ☒ The beneficial owner is not an individual, is claiming treaty benefits for dividends received from a foreign corporation or interest from a U.S. trade or business of a foreign corporation, and meets qualified resident status (see instructions).

**e** ☒ The beneficial owner is related to the person obligated to pay the income within the meaning of section 267(b) or 707(b), and will file Form 8833 if the amount subject to withholding received during a calendar year exceeds, in the aggregate, $500,000.

**10** Special rates and conditions (if applicable—see instructions): The beneficial owner is claiming the provisions of Article ████████ of the treaty identified on line 9a above to claim a ████ % rate of withholding on (specify type of income): ████████
Explain the reasons the beneficial owner meets the terms of the treaty article: ████████
████████████████

## Part III   Notional Principal Contracts

**11** ☒ I have provided or will provide a statement that identifies those notional principal contracts from which the income is not effectively connected with the conduct of a trade or business in the United States. I agree to update this statement as required.

## Part IV   Certification

Under penalties of perjury, I declare that I have examined the information on this form and to the best of my knowledge and belief it is true, correct, and complete. I further certify under penalties of perjury that:

● I am the beneficial owner (or am authorized to sign for the beneficial owner) of all the income to which this form relates,
● The beneficial owner is not a U.S. person,
● The income to which this form relates is not effectively connected with the conduct of a trade or business in the United States or is effectively connected but is not subject to tax under an income tax treaty, and
● For broker transactions or barter exchanges, the beneficial owner is an exempt foreign person as defined in the instructions.

Furthermore, I authorize this form to be provided to any withholding agent that has control, receipt, or custody of the income of which I am the beneficial owner or any withholding agent that can disburse or make payments of the income of which I am the beneficial owner.

**Sign Here** ▶  *Maria Vaughan*   7/7/03   DIRECTOR
Signature of beneficial owner (or individual authorized to sign for beneficial owner)   Date (MM-DD-YYYY)

Image reflects quality of original submission

# EXHIBIT C

## OPENING AN INTERNATIONAL BROKERAGE ACCOUNT

*The availability of these account features may be restricted in certain countries and for certain persons or entities.*

Please read the information below and complete the form at right.

1. Indicate the ownership of the account to be opened.
   Complete the *Account Holder* section with the organization's information and identify in the *Business Information* section officers or other individuals who are authorized to instruct UBS PaineWebber to conduct transactions in this account. Additional space is provided on the reverse side in case there are more than two such officers or other individuals.

2. Please complete any applicable U.S. tax forms, have them signed by an authorized person, indicate in the box that this has been done and return the form(s) with this Application. Please refer to the Account Information Booklet and seek tax counsel.

3. In the event the address provided on the Application is not the same as the address indicated on checks, checks will be sent to the mailing address provided unless Client indicates in the *International Resource Management Account (IRMA)* Features section where Client would like the checks sent.

4. Complete the Business Information section by indicating the name, title and phone number of each officer listed under item 4 of the Corporate Resolutions included in the application package. Complete and sign the General Trading Authorization or the Limited Trading Authorization, as applicable. Please indicate that either the General or the Limited Trading Authorization form has been signed by checking the appropriate box on the Application and provide the form with this Application.

5. To open an International Resource Management Account ("IRMA") complete the *International Resource Management Account (IRMA) Features* section. A description of each IRMA feature is provided below.

6. Please read the information regarding Margin below, then, if applicable, complete this section.

7. If no IRMA features are chosen the Account Holder will be opening a Basic Investment Account with the option to elect to use UBS PaineWebber Cashfund. UBS PaineWebber Cashfund is sold by prospectus only. Please complete the *UBS PaineWebber Cashfund* section for access to UBS PaineWebber Cashfund. If interested in any additional services for this account, or in opening other accounts, please complete the *Additional Services* section. Some of these services may require the completion of additional forms before they can be activated.

8. Complete all of the *Account Holder's Financial Information and Investment Objectives* section. If the account is for an organization or business the financial information provided should represent that of the Account Holder and not of the Principal Officer or the individual completing the application. Pay particular attention to the *Account Investment Objectives* for the investment activity in this account. For each account held, choose one return objective and a primary and, if applicable, secondary risk profile.

   **Return Objectives**
   *Current Income*—Investments seeking the generation of income.
   *Capital Appreciation*—Investments seeking growth of principal rather than the generation of income.
   *Current Income and Capital Appreciation*—Investments seeking both the generation of income and the growth of principal.

   **Risk Profiles**
   *Conservative*—Seeks securities that are most likely to preserve principal with low risk.
   *Moderate*—Seeks greater potential returns; willing to accept higher risk of loss of principal.
   *Aggressive/Speculative*—Seeks the potential for significant appreciation; willing to accept a high degree of risk of loss of principal.

9. Carefully read the Agreement and sign in the space indicated. This agreement contains provisions that require arbitration of disputes and a selection of law that will govern the relationship of the Account Holder with UBS International.

## INTERNATIONAL RESOURCE MANAGEMENT ACCOUNT (IRMA) FEATURES

IRMA combines our highest level of financial services with certain bank services and offers a variety of other key features. IRMA's monthly premier statement summarizes and itemizes all account activity, including investment transactions, cost basis and estimated gains and losses, checking and Platinum MasterCard™ activity. The IRMA simplifies tax planning and record keeping by providing details about investment and tax-related activity from the past year in nine-month and Year-End Summary statements. Deferred for the first year, the annual fee for an IRMA is $175.

**Check the appropriate box to choose which of the following account features are desired for the Account Holder's IRMA**

**Sweep Option/International Deposit Account**—IRMA automatically invests all cash balances from the sale of securities, interest income or transfers into the Account Holder's designated money sweep account ("Sweep Option"). The Sweep Option for the IRMA is generally the International Deposit Account ("IDA"). The IDA is maintained by UBS AG and enables cash balances

transferred from IRMA to earn interest income free from U.S. tax withholding, provided the IRMA client is a non-U.S. citizen, resides outside the United States and has a valid Form W-8 on file. (Consult your Financial Advisor to determine your Sweep Option.)

**Complimentary Platinum MasterCard™ Debit Card**—Allows Client to make purchases worldwide and also functions as an ATM card, giving Client access to cash 24 hours a day, seven days a week.

**Check Writing**—Offers unlimited checking and has no minimums or per check usage fees.

## MARGIN, CASHFUND AND ADDITIONAL SERVICES

**Margin**—Allows Client to increase Client's purchasing power by borrowing against the Account, using Client's securities as collateral. The Account automatically comes with margin unless Client chooses otherwise or it is an Estate Account. Margin lending is not suitable for all Clients and involves substantial risk. If this account will be serviced by one of our Managed Account programs, please indicate here that Client does not want margin, as this feature is not permitted in most Managed Account programs.

Margin is not suitable for all clients. Please review UBS PaineWebber's Loan Disclosure Statement for information on the risks involved with using margin.

Please indicate here whether you intend to engage in "pattern day trading" as defined by NYSE Rule 431. "Day trading" means purchasing and selling or selling and purchasing the same security in the same day in a margin account. "Pattern day trading" means executing four or more trades within five (5) business days if the number of day trades exceeds six (6) percent of the total trades during that period.

**UBS PaineWebber Cashfund**—If no IRMA features are chosen, Client will be opening a Basic Investment Account. This account allows, with an initial cash investment of $1000, the sweep of uninvested cash balances of $500 or more daily into UBS PaineWebber Cashfund. If Client would like this feature, check the appropriate box. UBS PaineWebber Cashfund is sold by prospectus only. Cashfund is a U.S. Fund, thus U.S. withholding is required. Please consult a tax advisor before investing.

To receive forms or applications for the following accounts and/or services, check the appropriate box.

- **Online Services**—Complimentary online investor service providing access to full account information (as of the previous business day's close) the latest market news including real time quotes†, research and so much more.

- **Bill Payment Service**—(generally only available if payee is in U.S.) For a nominal monthly fee, this IRMA feature allows the Account Holder to pay bills by telephone or personal computer.

**Direct Deposit**—Any allowable regularly occurring payments can be directly deposited into the Account Holder's IRMA.

**Electronic Funds Transfer Services†**—(generally only available if financial institution is in U.S.) Allows the Account Holder to easily move money on a variable or fixed schedule between the Account Holder's IRMA and accounts outside UBS International, such as savings, checking or other financial accounts.

**Managed Accounts**—UBS International offers a variety of professional investment management programs and services designed for individual investors and institutions.

**Financial Planning**—Our Financial Framework® is a financial planning program designed to help the Account Holder assess its projected financial situation relative to meeting its goals. The resulting analysis serves as the basis for helping craft appropriate investment strategies and alternatives for meeting specific financial objectives.

**Offshore Banking, Credit and Trust Products and Services**—A wide range of banking, credit and trust products and services are available to clients outside the United States tailored to individual needs.

†This Feature is not available for certain accounts. Consult your Financial Advisor.
Platinum MasterCard is both a trademark and service mark of MasterCard International Incorporated.
All trademarks and service marks are the property of UBS AG or an affiliate.

© 2002 UBS INTERNATIONAL INC. ALL RIGHTS RESERVED.

**Carefully read the attached International Brokerage Account Agreement and the Agreement at right before signing the Application and sign and date in the space indicated.**

Image reflects quality of original submission

 **UBS**

**ORGANIZATIONS & BUSINESSES**

## ACCOUNT APPLICATION AND AGREEMENT

### FOR NON-US CORPORATIONS, PARTNERSHIPS AND OTHER ENTITIES.

Thank you for choosing UBS International to help you meet your financial goals. This Account Application and Agreement can be used to open an account for a non-US organization or business.

Please carefully read the enclosed information, then complete the attached forms to establish an account. There are two forms enclosed:

**Account Application**
Use this application to open and select the features for your UBS International account.

The International Resource Management Account® (IRMA®) is our premier account, providing:
- Automated cash management designed to keep money continuously working.
- Various features to conveniently manage and access funds.
- Comprehensive account information for investment and tax planning.

If you are interested in opening an individual account, an account for an estate, a trust account for an individual, or a Managed Account, different or additional documentation is required. Please contact the UBS International office nearest you to request the necessary forms.

**Account Transfer Form**
Use this form if you are transferring assets from another brokerage firm, mutual fund company or bank to UBS International. Please attach a complete copy of the most recent statement of the account you are transferring. If you are transferring more than one account, be sure to use a separate form for each. (A photocopy of this form is acceptable.)

***Please Note:*** When you have finished completing the application, please tear out only the copies of the form with the red tabs and return them to UBS International. Keep the remainder of this booklet for your files.

2

# INTERNATIONAL BROKERAGE
## ACCOUNT APPLICATION
(FOR NON-US CORPORATIONS, PARTNERSHIPS AND OTHER ENTITIES)

ACCOUNT #: R2 609254V

**a →** The owner of this account is a: ☒ Corporation   ☐ Partnership   ☐ Other Please Specify:
Today's Date: 3/10/03   Type organization/business is a: ☐ Personal Investment Co.

### ACCOUNT HOLDER
Name: **THE MONA LISA TRUST**

Mailing Address (Street, City, State, Country, Postal Code):
**CALLE 80 No. 11-08**
**BOGOTA, COLOMBIA**

Name of Principal Officer: **NEGRUPORADA COM**
Date of Incorporation or Association:

Country or Countries that business is located in (Please Specify):
**COLOMBIA**

Mailing Address for correspondence (Street, City, Country, Postal Code):
**TCLE INVESTMENT**
**1200 BRICKELL AVE STE 10 FL**   Miami

### BUSINESS INFORMATION
**b →**

| Name of Principal Officer | Title/relationship to entity | Phone: | Passport or CEDULA No. |
|---|---|---|---|
| **RICHARD VAUGHAN** | **DIRECTOR** | 571-611-0657 | 3200 601172 |
| **MARIA LUISA VAUGHAN** | **DIRECTOR** | | |

### INTERNATIONAL RESOURCE MANAGEMENT ACCOUNT (IRMA) FEATURES

**NO PRINT**

### MARGIN

### UBS PAINEWEBBER CASHFUND

### ADDITIONAL SERVICES

### ACCOUNT HOLDER'S FINANCIAL INFORMATION AND INVESTMENT OBJECTIVES
Net Worth: **15 MM**
Liquid: **12 MM**
Annual Income: **1 MM**

List financial firms and banks where other accounts are held:  **MERRILL LYNCH**

### AGREEMENT
**c →** BY SIGNING BELOW ACCOUNT HOLDER ACKNOWLEDGES AND AGREES AS FOLLOWS TO ALL OF THE TERMS AND CONDITIONS IN THE INTERNATIONAL BROKERAGE ACCOUNT AGREEMENT ...

**x** Signature / Title/Capacity / Date: **June 15/03**

Document Code's:   Sweep Fund:   Managed Account:   Yearly of Account:
© 2002 UBS INTERNATIONAL INC. ALL RIGHTS RESERVED

Image reflects quality of original submission

NEW ACCOUNT COPY

3

Please use this section to provide information on any additional Principal Officers. Please be sure to have each Trustee sign the front of this form.

### ADDITIONAL PRINCIPAL OFFICERS

| Name of Principal Officer: | Title: | Phone: | Passport or CEDULA No. (Please attach copy of photo and signature): |
|---|---|---|---|
| Name of Principal Officer: | Title: | Phone: | Passport or CEDULA No. (Please attach copy of photo and signature): |
| Name of attorney-in-fact or agent authorized to give instructions (other than Officer): | Title/relationship to entity: | Phone: | Passport or CEDULA No. (Please attach copy of photo and signature): |
| Name of attorney-in-fact or agent authorized to give instructions (other than Officer): | Title/relationship to entity: | Phone: | Passport or CEDULA No. (Please attach copy of photo and signature): |

### ADDITIONAL PRINCIPAL OFFICERS

| Name of Principal Officer: | Title: | Phone: | Passport or CEDULA No. (Please attach copy of photo and signature): |
|---|---|---|---|
| Name of Principal Officer: | Title: | Phone: | Passport or CEDULA No. (Please attach copy of photo and signature): |
| Name of attorney-in-fact or agent authorized to give instructions (other than Officer): | Title/relationship to entity: | Phone: | Passport or CEDULA No. (Please attach copy of photo and signature): |
| Name of attorney-in-fact or agent authorized to give instructions (other than Officer): | Title/relationship to entity: | Phone: | Passport or CEDULA No. (Please attach copy of photo and signature): |

### ADDITIONAL PRINCIPAL OFFICERS

| Name of Principal Officer: | Title: | Phone: | Passport or CEDULA No. (Please attach copy of photo and signature): |
|---|---|---|---|
| Name of Principal Officer: | Title: | Phone: | Passport or CEDULA No. (Please attach copy of photo and signature): |
| Name of attorney-in-fact or agent authorized to give instructions (other than Officer): | Title/relationship to entity: | Phone: | Passport or CEDULA No. (Please attach copy of photo and signature): |
| Name of attorney-in-fact or agent authorized to give instructions (other than Officer): | Title/relationship to entity: | Phone: | Passport or CEDULA No. (Please attach copy of photo and signature): |

### DTC INSTRUCTIONS

If your account is set up to deliver securities and cash to a third party (i.e., deliver versus payment, please provide either DTC or Fed Wire instructions.

| DTC Clearing Number: | Name of Delivering Institution: | Internal Account Number: |
|---|---|---|
| Additional Information: | | |

| | | Del/Rec: N   Y |
|---|---|---|

### GOVERNMENT DELIVERY INSTRUCTIONS

| ABA Number: | Bank Name: | Department: |
|---|---|---|
| Third Party: | | Internal Account Number: |
| Other Instructions: | | |
| Physical Delivery: | | |

### ID CONFIRM INSTRUCTIONS

| Institutional ID Number: | Agent Bank/ID: | Instructive Notes: | AID CSD: |
|---|---|---|---|
| Internal Account Number of Receiving Bank: | | Internal Account Number of Institution: | |
| Interested Party ID Number: | | Interested Party Internal Account Number: | |
| Interested Party ID Number: | | Interested Party Internal Account Number: | |
| Receive Physical Master Confirm: ☐ Yes  ☐ No | AID Indicator: ☐ Yes (on AID)  ☐ No (not on AID) | STRATAW35: ☐ | |
| Special Instructions: | | | |

4

Image reflects quality of original submission

PLACE 3 X 5 LABEL HERE

| BUSINESS PHONE | | | ☐ COMMERCIAL PAPER | ☐ CORP BONDS | ☐ RMA/BSA | ☐ OPTIONS | |
|---|---|---|---|---|---|---|---|
| HOME PHONE | | | ☐ COMMODITIES | ☐ GOV. SECS. | ☐ MUN. BONDS | ☐ SHORT TERM TRADING | |
| | | | ☐ CONV. BONDS | ☐ HI-YIELD STOCKS | ☐ MUTUAL FUNDS | ☐ TAX SHELDS | |

| | | | BOUGHT | | | SOLD | | | APPROXIMATE | |
|---|---|---|---|---|---|---|---|---|---|---|
| DESCRIPTION | TYPE | DATE | QUANTITY | PRICE | DATE | QUANTITY | PRICE | PROFIT | LOSS |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

Image reflects quality of original submission

Image reflects quality of original submission

**RECEIVING FIRM INFORMATION**

Tax Identification No. 13-2638166

Delivery Instructions: All deliveries must include client name and UBS International brokerage account number.



6

# EXHIBIT D

Image reflects quality of original submission

## INTERNATIONAL BROKERAGE ACCOUNT AGREEMENT

### Introduction

### BASIC INVESTMENT ACCOUNT AGREEMENT

#### Authorization

## INTERNATIONAL RESOURCE MANAGEMENT ACCOUNT AGREEMENT

#### Authorization

#### Sweep Option

#### Check Writing Privilege

#### MasterCard(s)

#### Limitations

## IRMA Fees

## Payments

## MARGIN AGREEMENT

### Margin Requirements

### Risk

### Liquidation and Covering Positions

Page reflects quality of original submission

## AGREEMENT FOR JOINT ACCOUNTS

## GENERAL TERMS AND CONDITIONS

### Client Representation

### Introduced Accounts

### Special Accounts

### For Trusts and Custodial Accounts

### Rules and Regulations

### Anti-Money Laundering

### Liability

2

Image reflects quality of original submission

Check Provider and the Card Issuer against any losses arising from (a) any and all Account transactions effected or incurred by any person authorized to effect such transactions, including without limitation redemption of Cashfund or other Sweep Options and any other money market fund and similar fund shares, deposits and withdrawals of Sweep Option funds, use of the check writing privilege (including unsigned drafts presented by third parties), security transactions, MasterCard transactions, Electronic Funds Transfer Service transactions and (b) any debits, charges, fees or other obligations in the Account.

Client shall at all times be liable for the payment of any amounts advanced, any debit balance or other obligations owing in the Account and Client shall be liable to UBS International for any deficiency remaining in the Account in the event of liquidation thereof, in whole or in part, by either Client or UBS International. Additionally, Client agrees to be liable to UBS International for any accrued interest on any such amounts as UBS International's then customary rates, if applicable, or otherwise the maximum rate allowable by law. Client further agrees to indemnify UBS International against any loss, cost, expense, liability or damage arising out of Client's obligations hereunder. Client will be liable for the reasonable costs and expenses of collection (including attorney's fees), for any unpaid losses, fees or other amounts owed by Client to UBS International or against which Client has indemnified UBS International under the preceding sentence. Client shall be liable for any and all losses, claims, damages, penalties, fines, settlements, costs, charges, causes of action, debts, dues, sums of money, accounts, accountings, reckonings, acts, omissions, demands, obligations, damages, actions, suits, proceedings, judgments, liabilities and expenses (including without limitation all expenses of litigation or preparation therefor, whether or not UBS International is a party thereto) which UBS International may pay or incur arising out of any claims by any person or entity in any way relating to this Account. Neither UBS International nor its officers, directors, employees or agents shall under any circumstances or for any reason have any liability to Client for any consequential damages arising out of this Agreement and/or any services provided pursuant to this Agreement.

Client (and, in the case of a Joint Account, each individual Client) agrees that, in the event of the death of any Client, the survivor(s) or the estate shall immediately give UBS-I written notice thereof, and UBS-I may, before or after receiving such notice, take such actions, require such papers, inheritance or estate tax waivers or federal transfer certificates, retain such portion of the Account and restrict transactions in the Account as UBS-I may deem advisable to protect UBS-I against any tax, liability, penalty or loss under any present or future law or otherwise. Client's estate and the Account shall be jointly liable for all costs (including reasonable attorney's fees and costs) UBS International may incur in connection with the disposition of the Account and related assets and liabilities in the event of Client's death, disability or dissolution.

UBS International, the Check Provider and/or the Card Issuer shall be entitled to recover from a Joint Account or from any Client prior to any distribution of Property such costs as it may incur, including reasonable attorney's fees, as a result of any dispute between the Clients relating to or arising from a Joint Account or occasioned by the death of one or more Clients holding a Joint Account.

The estate of any Client holding a Joint Account who shall have died shall be liable and the survivor shall continue to be liable, jointly and severally, to UBS International, the Check Provider and/or the Card Issuer for any net debit balance or loss in the Joint Account in any way resulting from the completion of the transactions initiated prior to receipt, by UBS-I, of the written notice of the death of the decedent, or incurred in the liquidation of the Joint Account or the adjustment of the interests of the respective parties. The estate of the decedent and the survivor shall hereby jointly and severally agree to fully indemnify and hold harmless UBS International, the Check Provider and the Card Issuer from any liability for any taxes which may be owed in connection therewith or any claims by third parties.

If the Account is maintained with rights of survivorship, in the event of the death of either or any Client, all assets in the Account shall pass to and be vested in the survivor(s) on the same terms and conditions as previously held, without in any manner releasing the decedent's estate from the liabilities hereon.

**Security Interest**

As security for the payment of all liabilities or indebtedness presently outstanding or to be incurred under this or any other agreement between UBS International and Client, Client grants UBS International a security interest in any and all Property belonging to Client or in which Client may have any legal, equitable or other interest, held by UBS International or carried in any of Client's accounts with UBS International. All Property shall be subject to such security interest as collateral for the discharge of Client's obligations to UBS International, whenever or however arising and without regard to whether or not UBS International made loans with respect to such Property. In enforcing UBS International's security interest, UBS International shall have the discretion to determine the amount, order and manner of security to be applied and shall have all the rights and remedies available to a secured party under the New York Uniform Commercial Code. Without UBS International's prior written consent, Client will not cause or allow any of the collateral held in any of

Client's accounts with UBS International, whether now owned or hereafter acquired, to be or become subject to any liens, security interests, mortgages or encumbrances of any nature other than UBS International's security interest.

**Liquidation of Collateral of Account**

UBS-I may satisfy any and all amounts that Client owes UBS-I in connection with the Account from Property held by UBS International or carried in any of Client's accounts with UBS International, including but not limited to UBS-I. Additionally, UBS International may sell any or all Property held in any of Client's accounts with UBS International and cancel any open orders for the purchase or sale of any Property without notice in the event of Client's death or dissolution or whenever in UBS International's discretion UBS International considers it necessary for its protection. In such events UBS International also may borrow or buy-in all Property held in any of Client's accounts with UBS International required to make delivery against any sale effected for Client. Such sale or purchase may be public or private as may be made without advertising or notice to Client and in such a manner as UBS International may in its discretion determine. No demands, calls, tenders or notices by UBS International shall invalidate this waiver by Client. At any such sale UBS International may purchase the Property free of any right of redemption and Client shall be liable for any remaining deficiency in any of Client's accounts with UBS International, plus any accrued interest on such deficiency at UBS International's then customary rate, if applicable, or if not applicable, the maximum rate allowable by law. UBS International shall not be liable to Client in any way for any adverse tax consequences resulting from a liquidation of appreciated collateral.

**Orders, Executions, Deliveries, Settlements and Oral Authorizations**

Any order which Client gives shall be binding upon Client, and Client's personal representative(s) or authorized agents until UBS-I receives notice of Client's death. In the case of an individual, or dissolution, in the case of an entity. Such death or dissolution and notice will not affect UBS-I's right to take any action which UBS-I deems proper if UBS-I had not died or been dissolved. Client agrees that UBS-I shall look to UBS International in acting upon oral instructions given to UBS-I by Client or Client's authorized agent concerning the Account. In giving orders to sell, Client will inform UBS-I which sales are short sales and which are long sales. A short sale means any sale of a security not owned by the seller or any sale that is consummated by delivery of a borrowed security. The designation of a sale order as long is Client's representation that Client owns the security and if the security is not in UBS International's possession at the time of the contract for sale, Client agrees to deliver it to UBS International by the settlement date. In case of non-delivery of a security, UBS International is authorized to purchase the security to cover Client's position and charge any loss, commissions and fees to the Account. Client agrees that if UBS International fails to receive payment for securities purchased by Client, UBS International may, without prior demand or notice, sell securities or other Property held by UBS International in any of Client's accounts with UBS International and any resulting loss may be charged to the Account. Client understands and acknowledges that securities on the traded in more than one marketplace. Unless Client directs that an order to purchase or sell securities be executed on a specified exchange or market and UBS-I agrees to such execution, UBS-I will, in its sole discretion, subject to applicable regulatory requirements and without prior notification to Client, execute the order on the over-the-counter market in any location or on any exchange, including a foreign exchange where such security is traded, either on a principal or agency basis.

**Non-disclosure of Confidential and Material, Non-public Information**

UBS International provides a variety of services to its customers. In connection with providing these services, employees of UBS International may come into possession, from time to time, of confidential and material, non-public information. Under applicable law, employees of UBS International are prohibited from improperly disclosing or using such information for their personal benefit or for the benefit of any other person, regardless of whether such other person is a customer of UBS International. UBS International maintains and enforces written policies and procedures that (i) prohibit the communication of such information to persons who do not have a legitimate need to know and (ii) assure that UBS International meets its obligations to customers and otherwise complies in compliance with applicable law. Client understands and agrees that these policies and procedures are necessary and appropriate and recognizes that, in certain circumstances, employees of UBS International will have knowledge of certain confidential and material, non-public information which, if disclosed, might affect your decision to buy, sell or hold a security, but they shall be prohibited from communicating such information to Client. Client also understands and agrees that UBS International shall have no responsibility or liability to Client for failing to disclose such information to Client as a result of following its policies and procedures designed to provide reasonable assurances that it is complying with the law.

**Non-U.S. Securities**

If the Account contains securities issued by a non-U.S. issuer, Client acknowledges, to the extent UBS PaineWebber Inc. is itself a custodian with respect to such securities, that absent arrangements by either the issuer or Client with UBS-I to the contrary regarding distribution of issuer communications, UBS PaineWebber Inc. will not be obligated to distribute

**Restrictions on Trading**

Client understands that UBS-I may, in its sole discretion, with or without prior notice, prohibit or restrict trading of securities or substitution of securities in the Account and refuse to enter into any transactions with Client.

**Deposits of Funds**

All checks for deposit to the Account should be made payable to, or to be endorsed to, UBS PaineWebber Inc.

**Electronic Transfer of Funds**

When giving UBS-I instructions to accept or transfer funds electronically to or from the Account to any bank or other entity, Client agrees to provide UBS-I with an accurate name and account number designating the account to receive such funds. Client acknowledges that neither UBS International nor the bank or other receiving or transmitting entity is under any obligation to verify the identity of the beneficiary of the funds transfer and may rely exclusively upon the name or account number provided by Client. Client agrees to indemnify and hold UBS International harmless from and against any and all cost, expense, claims or liabilities arising from the provision by Client of an inaccurate name or account number; when accepting or transferring funds, neither UBS International nor the bank or other receiving or transmitting entity is under any obligation to determine whether the name and number provided by the Client refer to the same person or entity.

**Transfer of Excess Funds; Exchange Rate Fluctuations**

UBS International may transfer excess funds between any of Client's accounts with UBS International (including custody accounts) for any reason not in conflict with the Custody Technique Act or any other applicable law. If UBS-I effects any transactions for Client requiring a foreign currency, any profit or loss as a result of a fluctuation in the applicable exchange rate will be charged or credited to the Account.

**Principal, Interest and Dividend Payments**

With respect to principal and interest payments on debt instruments, UBS-I may credit the Account with principal and interest due on the payment dates and UBS-I will be entitled to recover any such payments from Client if the same are not actually received by UBS-I from the issuer or paying agent. Client acknowledges that interest will not be paid to Client on credit balances in the Account unless specifically agreed to by UBS-I in writing. UBS-I is not required to remit interest or dividends to Client on a daily basis.

**Fees and Charges**

Client understands that UBS-I may impose various service charges and other fees relating to the Account (see Selected Fees and Charges in the Disclosure Documents) as well as charge commissions and other fees for execution of transactions (to purchase and sell securities, options or other Property, and Client agrees to pay such charges, commissions and fees at UBS-I's then prevailing rates. Client also understands that such charges, commissions and fees may be imposed or changed from time to time without notice to Client, unless required by Rules or Regulations, and Client agrees to be bound thereby. Client agrees not to account transfer fee if Client instructs UBS-I to transfer the Account and to an administrative fee for the Account which produces insufficient commission revenue for any 12-month period. UBS-I will notify Client prior to applying either fee. Client agrees to pay a late charge, to the extent permitted by law if Client purchases securities on a cash basis and fails to pay for such securities by the settlement date. Any late charge UBS-I may impose will be at the maximum rate of interest set forth in UBS International's then current Statement of Credit Practices (which is found in the Disclosure Documents), if applicable, or otherwise at the maximum rate permissible by law, and may be charged from the settlement date to the date of payment, without regard to UBS International's rights to sell the securities in accordance with this Agreement and applicable laws, rules, and regulations. Client may obtain UBS-I's then current fees and charges by contacting Client's Financial Advisor or the local branch office.

**Interest Charges**

All amounts advanced and other balances due shall be charged interest in accordance with UBS International's usual custom, which may include the compounding of interest, including any increases in rates which reflect adjustments in UBS International's Base Loan Rate as such base is defined in UBS International's Statement of Credit Practices (which is found in the UBS International Account Information Booklet), and such other charges as UBS International may make to cover UBS International's facilities and extra services.

**Impartial Lottery Allocation System; Call Features**

When UBS International holds, as Client's behalf bonds or preferred stocks in UBS International's (street) name or in bearer form which are callable in part, Client agrees to participate in the impartial lottery allocation system of the called securities in accordance with the provisions of the New York Stock Exchange, Inc. rules. Further, Client understands that when the call is favorable, no allocation will be made to any account in which UBS International, its officers, or employees, have a beneficial interest until all other Clients' positions in such securities are satisfied on an impartial lottery basis. Client understands that UBS International may not receive timely notice of calls and may be required to allocate called securities on an as-of basis. In those cases, Client agrees to participate in the lottery allocation system and to be bound by its results. For debt securities, call or other redemption features, in addition to those disclosed on the trade confirmation, may exist.

3

**Waiver Not Implied**

**Binding Notice of Agreement**

**Accuracy of Reports; Communications**

**Disability or Incompetency**

**Unforeseeable Events**

**Successors and Assigns**

**Sub-Brokers**

**Changes to Agreement**

**Termination of Account**

**Additional Documentation**

**Written Notice**

**Entire Agreement**

**Applicable Law**

**Arbitration**

- Arbitration is final and binding on the parties.
- The parties are waiving their right to seek remedies in court, including the right to jury trial.
- Pre-arbitration discovery is generally more limited than and different from court proceedings.
- The arbitrator's award is not required to include factual findings or legal reasoning, and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.
- The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

Image reflects quality of original submission

4